IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LYNNE M. SMITH,                )
                               )
   Plaintiff,              )
                               )
                               )  CIVIL ACTION FILE
v.                             )
                               )  NUMBER 1:05-cv-2330-TCB
OTIS ELEVATOR COMPANY and      )
ABM AMTECH INCORPORATED,       )
                               )
   Defendants.             )

## ORDER

On January 21, 2004, Plaintiff Lynne Smith, an employee of Automatic Data Processing, Inc. was seriously injured when an elevator in the building at her place of employment misleveled. Her right tibia and fibula shattered when she stepped off the elevator, which had stopped a few inches above floor level. To date, Smith has undergone nine surgeries to correct the injuries she sustained, and significant additional medical treatment is a likely part of her future.

At the time of the incident, Smith had worker's compensation insurance with Liberty Mutual Insurance Company. So far, Liberty Mutual

has paid Smith $244,118.15 in medical expenses and $71,825.00 in indemnity benefits (lost wages), for a total of $315,943.15.[1]

On August 8, 2005, Smith brought this tort action against Defendants Otis Elevator Company and ABM Amtech Incorporated. On June 12, 2006, Liberty Mutual intervened to assert a subrogation lien as permitted by O.C.G.A. § 34-9-11.1, seeking to recover the $315,943.15 that it has paid from any sums awarded to Smith in the lawsuit.

On the eve of trial, which was scheduled to commence on July 7, 2008, Smith and the two Defendants settled Smith's claim; the Defendants agreed to pay Smith $1,750,000. The only issue that remains is whether Liberty Mutual can enforce its subrogation lien against Smith's $1,750,000 recovery.[2]

---

[1] A worker's compensation insurer's payment of indemnity benefits is contemplated by O.C.G.A. § 34-9-261, which states that an "employer shall pay or cause to be paid to the employee a weekly benefit equal to two-thirds of the employee's average weekly wage."

[2] Smith has moved for leave to file a supplemental brief in response to Liberty Mutual's reply brief [183] and attached its supplemental brief as an exhibit to its motion. Liberty Mutual opposes Smith's motion and has included in its opposition a response to Smith's supplemental brief. The Court grants Smith's motion for leave to file and has considered all submissions in arriving at the conclusions below.

O.C.G.A. § 34-9-11.1(b) grants a subrogation lien to a worker's compensation insurer who pays benefits to an employee and permits the insurer to intervene in an action by the employee against a third-party tortfeasor to protect and enforce the lien. However, the insurer's right to enforce the subrogation lien is limited as follows:

> [T]he . . . insurer's recovery under this Code section shall be limited to the recovery of the amount of disability benefits, death benefits, and medical expenses paid under this chapter and shall only be recoverable if the injured employee has been fully and completely compensated, taking into consideration both the benefits received under this chapter and the amount of the recovery in the third-party claim, for all economic and noneconomic losses incurred as a result of the injury.

O.C.G.A. § 34-9-11.1(b). The insurer has the burden of proving that the employee has been fully and completely compensated. *Ga. Elec. Membership Corp. v. Garnto*, 266 Ga. App. 452, 454, 597 S.E.2d 527, 529 (2004).

When determining whether an employee has been fully and completely compensated, "the trial court may not consider the affirmative defenses of contributory/comparative negligence/assumption of risk . . . because the employee's total economic and noneconomic losses make up the full and complete compensation unreduced by such defenses" under the statute. *Canal Ins. Co. v. Liberty Mut. Ins. Co.*, 256 Ga. App. 866, 873, 570

3

S.E.2d 60, 67 (2002). Further, a court is not concerned with the total recovery being sufficient in monetary size to return the plaintiff to her pre-injury status, but rather should focus on each category of damages separately and compare it to the damages the plaintiff actually incurred. *See id.* Finally, "the insurer [cannot] assert a subrogation lien against noneconomic damages, i.e., pain and suffering where, under the [statute], no noneconomic benefits were paid." *Id.*

In its brief seeking enforcement of its subrogation lien, Liberty Mutual acknowledges that without an allocation of the settlement proceeds between economic and noneconomic losses, it is usually impossible to determine if the employee has been fully and completely compensated, in which event the worker's compensation lien cannot be enforced. *See Bartow County Bd. of Educ. v. Ray*, 229 Ga. App. 333, 335, 494 S.E.2d 29, 31 (1997) (stating that where it is impossible to determine what portion of a recovery is to be applied to economic losses and what portion is allocated to noneconomic losses, there is no way to know whether the employee has been fully and completely compensated).

In this case, it is undisputed that Smith and the two settling Defendants did not apportion the $1.75 million settlement proceeds

4

between Smith's economic and noneconomic losses. Therefore, unless there is some other evidence of how the settling parties intended to apportion the settlement proceeds, Liberty Mutual cannot meet its burden of proving that Smith has been fully and completely compensated, and the subrogation lien must be denied. *See id.*

Liberty Mutual attempts to avoid this result by pointing to Smith's representations in the pre-trial order[3] that her past medical expenses are $500,503.73 and that her past lost wages are $108,022.20, the sum of which is $608,525.93. Moreover, Liberty Mutual contends that the reimbursable amount of medical expenses is actually $244,118.15.[4] Based on these admissions by Smith, Liberty Mutual asserts that Smith's settlement proceeds should be apportioned as follows:

| | |
|---|---:|
| Medical Expenses | $244,118.15 |
| Lost Wages | 108,022.20 |
| Future Medical Expenses | 45,000.00 |
| Pain and Suffering | <u>1,352,859.65</u> |
| Total | $1,750,000.00 |

---

[3] Smith's factual representations in the pre-trial order obviously are admissions *in judicio*. *Anthem Cas. Ins. Co. v. Murray*, 246 Ga. App. 778, 781 n.10, 542 S.E.2d 171, 174 (2001).

[4] The Court assumes that Liberty Mutual received provider discounts on the amount it paid on behalf of Smith, though this fact is never explicitly stated.

Based on this apportionment, Liberty Mutual then contends that Smith has now received $488,236.30 in medical expenses ($244,118.15 from Defendants and $244,118.15 from Liberty Mutual) and $179,847.20 in lost wages ($108,022.20 from Defendants and $71,825.00 from Liberty Mutual). Finally, Liberty Mutual contends that because Smith's actual medical expenses were only $244,118.15 and her lost wages were only $108,022.20, as a matter of law Smith has been fully and completely compensated, i.e., she has received every penny—and then some—of her economic losses (medical expenses and lost wages).

There are two problems with Liberty Mutual's argument. First, Liberty Mutual has presented no evidence that Smith and the two settling Defendants intended for the $1.75 million payment to Smith to be apportioned in the manner suggested by Liberty Mutual, as set forth *supra*. Rather, Liberty Mutual's argument *presumes* that Defendants intended to fully compensate Smith for her $244,118.15 in medical expenses and $108,022.20 in lost wages and that the remainder of her settlement was intended to compensate her for pain and suffering and future lost wages. However, the Georgia Court of Appeals has expressly rejected this presumption. *See Ray*, 229 Ga. App. at 335, 494 S.E.2d at 31 ("Although it

is possible the jury intended first to award [the employee] all of her economic losses, with the remainder for pain and suffering, it is equally possible the jury intended most of the award to compensate for pain and suffering. The latter scenario would not leave [the employee] fully and completely compensated for her economic losses.").

In fact, in support of her opposition to enforcement of the lien, Smith has filed the affidavit of Defendants' counsel, Diane Owens, in which Owens testifies that "[t]he settlement was not intended, nor did it, in my opinion, fully and completely compensate Lynne Smith for all of her economic and non-economic losses." Owens further testifies that the parties' settlement attributed to Smith comparative negligence of thirty to forty-five percent, meaning that had Defendants not taken Smith's own negligence into account, the settlement amount would have been much higher.5 *See Canal*,

---

5 Liberty Mutual contends that the Court should disregard Owens's affidavit because the Georgia Court of Appeals has discredited expert affidavits regarding full and complete compensation in the past. *See CGU Ins. Co. v. Sabel Indus., Inc.*, 255 Ga. App. 236, 241, 564 S.E.2d 836, 840 (2002). However, the Court has not relied on Owens as an expert on full and complete compensation, but rather has found her testimony probative of how the Defendants intended the settlement to compensate Smith. For this purpose, Owens's affidavit is extremely relevant. *See Canal*, 256 Ga. App. at 866, 570 S.E.2d at 62 (noting that the settling defendant had been "of the opinion that the settlement with [the employee] was less than full compensation for his injuries and damages, both economic and noneconomic from evidence in the suit").

7

256 Ga. App. at 873, 570 S.E.2d at 67 (2002) (stating that an employee's contributory negligence should not be taken into account when determining whether the employee was fully and completely compensated).

The second problem with Liberty Mutual's contention is that Liberty Mutual has not offered any argument or evidence that Smith has been fully compensated for her *noneconomic* losses. To prove that an employee has been fully and completely compensated, the insurer must prove not only that the employee has been compensated for all of her economic losses, but also her noneconomic losses. O.C.G.A. § 34-9-11.1. Having failed to even address this issue, Liberty Mutual obviously has failed to carry its burden of proof.

For these reasons, the Court finds that Liberty Mutual has failed to carry its burden of proving that Smith has been fully and completely compensated for her economic and noneconomic losses. Accordingly, Liberty Mutual's subrogation lien is hereby DENIED and DISSOLVED. The Clerk is DIRECTED to close this case.

IT IS SO ORDERED this 31st day of July, 2008.

_____
Timothy C. Batten, Sr.
United States District Judge

8